UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH SANTOS,<br><br>        Plaintiff,<br><br>    v.<br><br>ACE AMERICAN INSURANCE COMPANY;<br>and DOES 1 through 20,<br>Inclusive,<br><br>        Defendants. | No.  2:12-CV-02059-JAM-EFB<br><br>**ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT** |

This matter is before the Court on Defendant ACE American Insurance Company's ("Defendant") Motion for Summary Judgment (Doc. ##11-16).  Plaintiff Elizabeth Santos ("Plaintiff") opposed the motion (Doc. #17) and Defendant replied (Doc. ##20-23).[1]  For the following reasons, Defendant's motion is GRANTED.

I.    PROCEDURAL AND UNDISPUTED FACTUAL BACKGROUND

On July 14, 2009, Plaintiff was injured in an automobile accident with an underinsured motorist.  Plaintiff's Statement

---

[1] This motion was determined to be suitable for decision without oral argument.  E.D. Cal. L.R. 230(g).  The hearing was scheduled for October 23, 2013.

1    of Undisputed Facts (Doc. #17, Ex. 1) ("PSUF") at ¶ 1.  Prior to

2    July 14, 2009, Defendant issued a Business Auto Insurance Policy

3    ("the 2009 Policy") to Boehringer Ingelheim USA Corporation

4    ("Boehringer"), for the period of January 1, 2009 to January 1,

5    2010.  Plaintiff's Statement Disputing Defendant's Statement of

6    Undisputed Facts (Doc. #17, Ex. 2) at ¶ 1.  At the time of the

7    accident, Plaintiff was covered under the 2009 Policy, as an

8    employee of Boehringer operating a company vehicle in the course

9    and scope of her employment.  PSUF at ¶ 8.  On January 22, 2009,

10   Dorota Biernat ("Biernat"), the Executive Director, Finance at

11   Boehringer, executed an Uninsured/Underinsured Motorist

12   Selection/Rejection Form ("2009 UIM Rejection Form"), indicating

13   Boehringer's rejection of bodily injury liability coverage for

14   damages caused by uninsured/underinsured motorists ("UIM

15   coverage") under the 2009 Policy.  Biernat Declaration (Doc.

16   #15) at ¶¶ 10-11.

17        On August 7, 2012, Plaintiff filed the Complaint (Doc. #1)

18   in this Court.  On September 5, 2013, Defendant moved for

19   summary judgment against Plaintiff (Doc. #11).

20

21                        II.   OPINION

22        A.   Legal Standard

23        Summary judgment is proper "if the pleadings, depositions,

24   answers to interrogatories, and admissions on file, together

25   with affidavits, if any, show that there is no genuine issue of

26   material fact and that the moving party is entitled to judgment

27   as a matter of law."  Fed. R. Civ. P. 56(a).  The purpose of

28   summary judgment "is to isolate and dispose of factually

                                  2

1   unsupported claims or defenses." <u>Celotex v. Catrett</u>, 477 U.S.

2   317, 323-324 (1986).

3       The moving party bears the initial burden of demonstrating

4   the absence of a genuine issue of material fact for trial.

5   <u>Anderson v. Liberty Lobby</u>, Inc., 477 U.S. 242, 248-49 (1986).

6   If the moving party meets its burden, the burden of production

7   then shifts so that "the non-moving party must set forth, by

8   affidavit or as otherwise provided in Rule 56, 'specific facts

9   showing that there is a genuine issue for trial.'" <u>T.W.</u>

10  <u>Electrical Services, Inc. v. Pacific Electric Contractors Ass'n</u>,

11  809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed. R. Civ. P.

12  56(e)).  The Court must view the facts and draw inferences in

13  the manner most favorable to the non-moving party.  <u>United</u>

14  <u>States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).  "[M]ere

15  disagreement or bald assertion that a genuine issue of material

16  fact exists will not preclude the grant of summary judgment".

17  <u>Harper v. Wallingford</u>, 877 F. 2d 728, 731 (9th Cir. 1987).

18      The mere existence of a scintilla of evidence in support of

19  the non-moving party's position is insufficient: "There must be

20  evidence on which the jury could reasonably find for [the non-

21  moving party]." <u>Anderson</u>, 477 U.S. at 252.  This Court thus

22  applies to either a defendant's or plaintiff's motion for

23  summary judgment the same standard as for a motion for directed

24  verdict, which is "whether the evidence presents a sufficient

25  disagreement to require submission to a jury or whether it is so

26  one-sided that one party must prevail as a matter of law." <u>Id.</u>

27  ///

28  ///

3

1      B.    Evidentiary Objections

2            1.    Relevance Objections, Generally

3      Both Plaintiff and Defendant make a number of evidentiary

4 objections, many of which are based on relevance.  As an initial

5 matter, relevance objections at the summary judgment stage are

6 redundant.  Burch v. Regents of Univ. of California, 433 F.

7 Supp. 2d 1110, 1119 (E.D. Cal. 2006).  As a court awards summary

8 judgment only when there is no genuine dispute of material fact,

9 "it cannot rely on irrelevant facts."  Id.  Accordingly,

10 relevance objections are better saved for the substantive

11 discussion of the summary judgment motion.  Nevertheless, given

12 the limited number of objections, the Court will address each in

13 turn.

14           2.    Plaintiff's Objections to the Biernat Declaration

15     Defendant submitted an affidavit from Dorota Biernat (the

16 Executive Director, Finance at Boehringer).  Plaintiff objects

17 to statements in Biernat's affidavit on two grounds.  First,

18 Plaintiff argues that Biernat's belief that UIM coverage did not

19 exist in the 2009 Policy is irrelevant.  However, the

20 predominant legal issue in this case is whether there was a

21 clear agreement between the insurer and the insured

22 (Boehringer).  Pechtel v. Universal Underwriters Ins. Co., 15

23 Cal.App.3d 194, 200 (1971).  Relevant to that inquiry is the

24 opinion of the insured as to the existence or non-existence of

25 UIM coverage.  Myers v. Nat'l Auto. & Cas. Ins. Co., 252

26 Cal.App.2d 599, 603 (1967) (supporting its determination that an

27 effective waiver of UIM coverage existed with a finding that

28 "there is no dispute between the insurer and the person to whom

4

1    the policy was issued as to what the provisions of the policy

2    were to be" in that "both intended and understood that the

3    uninsured motorist provision was to be deleted").  As the

4    opinion of the insured who signed the disputed waiver is

5    relevant to the Court's inquiry, Plaintiff's relevance objection

6    to the Biernat Declaration is overruled.

7         Second, Plaintiff argues that Biernat's opinion as to the

8    non-existence of UIM coverage is incompetent opinion testimony

9    due to Biernat's lack of "the necessary training, experience, or

10   knowledge to express a professional opinion."  Opp. at 3.

11   Biernat does not purport to express an expert opinion, and thus

12   her testimony is governed by Rule 701 of the Federal Rules of

13   Evidence ("FRE").  Under FRE 701, non-expert opinion testimony

14   is competent and admissible if it is "(a) rationally based on

15   the witness' perception and (b) helpful . . . to determining a

16   fact in issue."  Here, Biernat's opinion that UIM coverage did

17   not exist is rationally based on her experience as the

18   individual who personally signed the 2009 UIM Rejection Form.

19   Biernat Declaration (Doc. #15) at ¶ 11.  Although her opinion

20   that UIM coverage did not exist is, of course, not conclusive

21   proof on this issue, it remains helpful to determining whether

22   there was an effective waiver of UIM coverage: as Biernat (on

23   behalf of Boehringer) does not dispute the non-existence of UIM

24   coverage, this tends to prove that that "the named insured and

25   the insurer clearly have agreed to delete the uninsured motorist

26   coverage."  Pechtel, 15 Cal.App.3d at 200; see also, Myers, 252

27   Cal.App.2d at 603.  Accordingly, Plaintiff's objection is

28   overruled.

1                 3.    <u>Defendant's Objections to Plaintiff's Affidavit</u>

2          Plaintiff submitted her own sworn statement to the effect

3    that she did not know that Boehringer had waived UIM coverage,

4    and she thought that the 2009 Policy included UIM coverage.

5    Santos Declaration (Doc. #17, Ex. 4).   Defendant objects to a

6    number of statements in this affidavit on relevance grounds.

7    Under California Insurance Code section 11580.2(a)(1), the

8    agreement to delete UIM coverage "by any named insured . . .

9    shall be binding upon every insured to whom the policy or

10   endorsement provisions apply."   Accordingly, if Boehringer

11   executed an effective waiver, deleting UIM coverage from the

12   policy, it is irrelevant whether Plaintiff knew about that

13   waiver or expected that UIM coverage was included in the policy.

14   See <u>Weatherford v. Nw. Mut. Ins. Co.</u>, 239 Cal.App.2d 567, 569

15   (1966) (declining to interpret section 11580.2 as imposing a

16   requirement that an effective waiver of UIM be signed by "all"

17   insured parties).   Accordingly, Plaintiff's affidavit, including

18   the objected-to statements, is irrelevant, and Defendant's

19   objections are sustained.   As the statements are irrelevant, the

20   Court does not reach Defendant's hearsay objections.

21                 4.    <u>Defendant's Objection to the Baumbach Declaration</u>

22        Plaintiff's attorney, Larry Baumbach, submitted an

23   affidavit to the effect that Defendant has engaged in various

24   forms of discovery misconduct.   (Doc. #17, Ex. 3).   Defendant

25   objects to these allegations of discovery misconduct as

26   irrelevant.

27        As Defendant argues, Plaintiff's allegations of discovery

28   misconduct could be properly raised under Rule 56(d) of the

1    Federal Rules of Civil Procedure, through a specific discovery

2    request, or through a motion to continue or defer judgment.

3    See, e.g., Tatum v. City & Cnty. of San Francisco, 441 F.3d

4    1090, 1100 (9th Cir. 2006).  However, in opposition to

5    Defendant's motion for summary judgment, these allegations of

6    discovery misconduct are irrelevant, as they do not tend to

7    prove or disprove a material fact.  Therefore, Defendant's

8    objection is sustained.

9            5.   Defendant's Objections to the Beach Letter

10        Plaintiff's Exhibit 1 is a letter, which purports to be

11   sent by someone named Steven Beach, informing Plaintiff that she

12   has $1 million of UIM coverage under the 2009 Policy.  Ex. 1,

13   attached to Opp. (Doc. #17).  Defendant objects to this letter

14   on the grounds that it has not been properly authenticated and

15   that it is irrelevant.

16        "The foundational requirement of authentication or

17   identification as a condition precedent to admissibility is

18   satisfied by evidence sufficient to support a finding that the

19   matter in question is what its proponent claims."  United States

20   v. Tank, 200 F.3d 627, 630 (9th Cir. 2000).  Here, Plaintiff has

21   failed to provide any sworn testimony tending to prove that the

22   letter is what Plaintiff claims it to be.  Accordingly, the

23   letter has not been properly authenticated.

24        Furthermore, even if the letter were authenticated, the

25   letter is irrelevant.  Plaintiff has failed to cite any

26   authority suggesting that the doctrine of waiver and estoppel

27   applies, such that Defendant's alleged communication with

28   Plaintiff negated Boehringer's deletion of UIM coverage.  In

                                  7

California, it is "well-established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom." <u>Manneck v. Lawyers Title Ins. Corp.</u>, 28 Cal.App.4th 1294, 1303 (1994).  Accordingly, it is irrelevant whether Defendant sent a letter to Plaintiff informing her that she had UIM coverage under the 2009 Policy.  Defendant's objection is sustained.  As the letter lacks foundation and is irrelevant, the Court does not reach Defendant's hearsay objections.

     C.   <u>Discussion</u>

          1.   <u>Governing Law</u>

     California law mandates that UIM coverage be included in every automobile policy issued by an insurer licensed in California to cover a motor vehicle "then principally used or principally garaged" in California.  Cal. Ins. Code § 11580.2(a)(1).  However, the statute also provides an express means by which the insured may reject UIM coverage: "The insurer and any named insured, prior to or subsequent to the issuance or renewal of a policy, may, by agreement in writing, in the form specified in paragraph (2) or paragraph (3) . . . delete the provision covering damage caused by an uninsured motor vehicle completely."  Paragraph (2) spells out the exact language which should appear in the written agreement to effect a valid rejection.  Cal. Ins. Code § 11580.2(a)(2).  Although the operative terms of section 11580.2(a)(1) refer only to "uninsured" motor vehicles, section 11580.2(a)(2) clarifies that

1  this "includes underinsured" motor vehicles as well.   Id.

2          2.   Conspicuous, Plain, and Clear Waiver

3          Plaintiff first argues that "there is no conspicuously

4  written or displayed exclusion of UIM coverage" in the 2009

5  Policy, as originally issued to Boehringer.  Opp. at 6.

6  Plaintiff cites a number of cases for the proposition that an

7  ambiguity in an insurance policy must be construed against the

8  insurer, such that ambiguities are generally resolved in favor

9  of coverage.  Opp. at 5 (citing In re K F Dairies, Inc. &

10 Affiliates, 224 F.3d 922, 926 (9th Cir. 2000); Hanson By &

11 Through Hanson v. Prudential Ins. Co. of Am., 783 F.2d 762, 763

12 (9th Cir. 1985)).  Plaintiff also notes that coverage

13 limitations must be "conspicuous, plain and clear."  Opp. at 6

14 (citing Haynes v. Farmers Ins. Exch., 32 Cal.4th 1198, 1204

15 (2004)).  In support of this argument, Plaintiff quotes Utah

16 Home Fire Ins. Co. v. McCarty in its entirety.  266 Cal.App.2d

17 892 (1968).  Defendant responds that the exclusion signed by

18 Boehringer is not ambiguous and, accordingly, the rules of

19 policy interpretation are inapplicable to this case.  Reply at

20 5.  Defendant further notes that the language of the 2009

21 Rejection Form matches the statutorily required language

22 verbatim.  Mot. at 4.

23          Plaintiff's argument that the policy must be construed

24 against Defendant is misplaced.  The 2009 Rejection Form

25 contains "conspicuous, plain and clear" language which deletes

26 UIM coverage from the policy.  Haynes, 32 Cal.4th at 1204.  In

27 the 2009 Rejection Form, Dorota Biernat's initials appear

28 directly next to the words "I reject Bodily Injury Uninsured

9

1   Motorists Coverage entirely."  Exhibit A, attached to the

2   Biernat Declaration (Doc. #15).  In addition, the form contains

3   the exact language contemplated by the Legislature in enacting

4   section 11580.2.  Accordingly, there are no ambiguities in the

5   policy and only one reasonable interpretation exists: that UIM

6   coverage was deleted by virtue of the 2009 Rejection Form signed

7   by Boehringer.  Hanson, 783 F.2d at 763 ("*[i]f two or more*

8   *interpretations are reasonable*, we must adopt the interpretation

9   that favors coverage) (emphasis added).

10       Plaintiff's extensive reliance on Utah Home is inapposite.

11   In Utah Home, the court considered the validity of an insured's

12   waiver of UIM coverage.  Utah Home, 266 Cal.App.2d at 893.  The

13   insured signed a waiver form entitled "waiver of family

14   protection or protection against uninsured motorist coverage."

15   Id.  According to the court, when the insured signed the waiver,

16   "the form was then blank" and only later did the insurer add

17   more detailed language purporting to delete UIM coverage.  Id.

18   The court noted that "when [the insured] had signed the waiver

19   form it had told him (1) that it was to be an endorsement of the

20   policy; (2) that there was to be a "return premium"; and (3)

21   that it was to be counter-signed by an 'authorized

22   representative.'  Nothing of the sort happened."  Id. at 894.

23   The court found that the waiver of UIM coverage was ineffective,

24   as the insurer's actions "created nothing but confusion" and the

25   insured, "as a layman . . . could not be expected to know that

26   . . . under strict contract law, these blemishes did not

27   necessarily make his waiver ineffective."  Id. at 895.

28   ///

1    The present case is quite different from <u>Utah Home</u>.  Most

2    notably, the waiver signed by Boehringer contained clear and

3    unambiguous language at the time that it was signed.

4    Furthermore, unlike in <u>Utah Home</u>, there is no dispute between

5    the insurer and the waiving insured (Boehringer) as to the non-

6    existence of UIM coverage.  <u>Myers</u>, 252 Cal.App.2d at 603.

7    Finally, none of the circumstances surrounding Boehringer's

8    waiver create the "confusion" present in <u>Utah Home</u>.

9           3.   <u>Absence of Defendant's Signature on 2009
                 Rejection Form</u>

10

11   Plaintiff next argues that the absence of Defendant's

12   signature from the 2009 Rejection Form shows that Boehringer

13   never communicated its intent to reject UIM coverage to

14   Defendant.  Plaintiff argues that this makes the waiver

15   ineffective under section 11580.2.  Plaintiff contends that

16   <u>Mission Ins. Co. v. Brown</u> stands for the proposition that "the

17   only way in which uninsured motorist coverage may be waived is

18   by an agreement in writing signed by the insurer and the

19   insured."  63 Cal. 2d 508, 509-10 (1965).  Defendant responds

20   that there is no statutory or case law requirement that both the

21   insurer and the insured sign a section 11580.2 waiver.

22   Defendant argues that the language cited by Plaintiff from

23   <u>Mission</u> was unnecessary to resolve the case, and thus is non-

24   binding dicta.  Defendant also maintains that a number of

25   California cases have suggested that section 11580.2 waivers

26   need not be signed by both the insurer and the insured.

27   Section 11580.2(a)(1) provides that "[t]he insurer and any

28   named insured, prior or subsequent to the issuance or renewal of

1    a policy, may, by agreement in writing, in the form specified in

2    paragraph (2) . . . delete the provision covering damage by an

3    uninsured motor vehicle completely." Despite the court's dicta

4    in Mission that UIM coverage may only be waived by "an agreement

5    in writing signed by the insurer and the insured," a number of

6    California courts have since found that a clear waiver, even if

7    it is not signed by the insurer, constitutes an effective

8    rejection under section 11580.2.  Mission, 63 Cal. 2d at 509-10

9    (1965).  For example, in Abbott v. California State Auto Assn.,

10   the court upheld the trial court's finding that a section

11   11580.2 waiver was effective "based on the deletion of uninsured

12   motorist coverage by [the insurer] upon receipt of a letter from

13   [the insured] requesting that 'uninsured motorists coverage not

14   be carried.'" 68 Cal.App.3d 763, 772 (1977).  The Abbott court

15   expressly rejected the argument that "in order that there be a

16   valid waiver there must be a written agreement signed by both

17   the insured and the insurer."  Abbott, 68 Cal.App.3d at 772.

18   Similarly, the court in Holland v. Universal noted that "there

19   is no magic in having all signatures on the same document."

20   Holland v. Universal Underwriters Ins. Co., 270 Cal.App.2d 417,

21   420 (1969) (citing Weatherford v. Nw. Mut. Ins. Co., 239

22   Cal.App.2d 567, 569 (1966), in which the insured sent a letter

23   to the insurer authorizing it to delete the coverage, and the

24   insurer then issued a separate document, signed by an authorized

25   representative).

26       Furthermore, in Harrison v. California State Auto Assn.,

27   the court determined that a waiver of UIM coverage was effective

28   despite the fact that the insurer's signature did not appear on

1    any of the documents which expressly mentioned plaintiff's

2    waiver of UIM coverage.   Harrison v. California State Auto.

3    Assn. Inter-Ins. Bureau, 56 Cal.App.3d 657, 666 (1976).  The

4    plaintiff in Harrison made the same argument advanced by

5    Plaintiff in the present case, maintaining "that the [entire

6    insurance] policy [was] effective but contend[ing] that only the

7    deletion of uninsured motorist coverage [was] ineffective

8    because no company signature appear[ed] on the cover sheet or

9    the endorsement." Id. at 664.  The Harrison court expressly

10   rejected this argument, ruling that the waiver was effective and

11   that UIM coverage had been deleted from the policy.  Id. at 665.

12   Collectively, these cases stand for the proposition that

13   "[w]here the named insured and the insurer clearly have agreed

14   to delete the uninsured motorist coverage, the agreement will be

15   upheld" under section 11580.2.  Pechtel, 15 Cal.App.3d at 200.

16        Furthermore, it is well established that, in California,

17   "there is no requirement that every rider attached to a policy

18   must . . . be signed." Harrison, 56 Cal.App.3d at 665; see

19   also, Legare v. W. Coast Life Ins. Co., 118 Cal. App. at 663,

20   667 (1931) (noting that "[n]o requirement has been called to

21   [the court's] attention that every rider attached to a policy

22   must . . . be signed").  It is possible to read these cases as

23   implying a corollary rule that any unsigned modification *not*

24   attached to the original policy is invalid.  See Legare, 118

25   Cal.App. at 667 (holding that the absence of the insurer's

26   signature from an "illustration" attached to the policy did not

27   affect its validity, but distinguishing the illustration, which

28   was "part and parcel of the policy when it was issued," from "a

13

1   modification of the policy after its issuance"). However, no

2   California court has directly addressed this issue, and more

3   recent cases suggest that a waiver of UIM under section 11580.2

4   need not be signed by the insurer, even if it is not attached to

5   the original policy when issued.  In Abbott, as discussed above,

6   the court determined that a waiver of UIM coverage complied with

7   section 11580.2, where the insurer deleted the coverage after

8   receiving a letter from the insured.  Abbott, 68 Cal.App.3d at

9   772.  This was despite the fact that the waiver was neither

10  signed by the insurer nor attached to the policy when originally

11  issued.  Id.  Accordingly, the Court declines to read Harrison

12  and Legare as requiring that a valid waiver under section

13  11580.2 must be either signed by the insurer or attached to the

14  policy when originally issued.

15      Defendant has noted that when "the Legislature intends that

16  both parties to an agreement must sign a written agreement, it

17  says so."  Reply at 3 (citing, as an example, the rule

18  permitting a court to enter judgment pursuant to the terms of a

19  settlement if "the parties to the pending litigation stipulate,

20  in a writing signed by the parties . . . for settlement of the

21  case").  Notably, similar language is absent from section

22  11580.2, which permits the insurer and the insured to delete UIM

23  coverage "by agreement in writing."  Cal. Ins. Code §

24  11580.2(a)(1).  As discussed above, this language requires only

25  that "the named insured and the insurer clearly have agreed to

26  delete the uninsured motorist coverage."  Pechtel, 15 Cal.App.3d

27  at 200.  This conclusion is buttressed by the language in the

28  section immediately following 11580.2, which governs agreements

14

1    to limit (rather than completely delete) UIM coverage.  Cal.

2    Ins. Code § 11580.3.  In 11580.3, the Legislature provided that

3    such an agreement is valid if it is "signed by the named insured

4    and *approved* by the insurer."  Id. (emphasis added).  As

5    agreements under 11580.3 are valid even if only "approved" by

6    the insurer (as opposed to being "signed" by the insured), it

7    seems unlikely that the Legislature intended to implicitly

8    require that similar agreements under section 11580.2 be signed

9    by both the insurer and the insured.

10                   4.   Communication of Intent to Defendant

11        Plaintiff's overarching argument is that, although

12   Boehringer may have intended to reject UIM coverage, Defendant

13   has failed to establish that Boehringer communicated that intent

14   to Defendant.  At first blush, this appears to create a dispute

15   of material fact: Defendant claims that it was apprised of

16   Boeheringer's waiver, whereas Plaintiff claims that the

17   rejection was never communicated to Defendant.  However, a

18   closer examination reveals that Plaintiff has merely posed a

19   legal argument masquerading as a factual dispute.  Plaintiff's

20   "communication of intent" argument revolves around the absence

21   of Defendant's signature from the 2009 Rejection Form.  As

22   discussed above, the significance of this absence is legal in

23   nature, not factual.  See, e.g., Harrison, 56 Cal.App.3d at 665

24   (characterizing a similar issue, relating to the absence of the

25   insurer's signature from a waiver of UIM coverage, as "a

26   question of law").  The absence of the insurer's signature from

27   a section 11580.2 waiver does not preclude summary judgment in

28   favor of the insurer.  Id.  Accordingly, as there are no issues

                                   15

1   of material fact in this case, summary judgment is appropriate.

2

3                      III. ORDER

4      For the reasons set forth above, Defendant's Motion for

5   Summary Judgment is GRANTED.

6      IT IS SO ORDERED.

7   Dated: November 27, 2013

8                   JOHN A. MENDEZ,
                  UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28